# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JAMES W. GIDDY,

      PLAINTIFF,

v.                                          CASE NO.: CV-10-J-1383-NW

THE CITY OF HUNTSVILLE, ALABAMA,
et al.,

      DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court are the defendants' motions for summary judgment and evidence in support of said motion (docs. 41-44), the plaintiff's response and evidence in opposition (docs. 47-48), and the defendants' reply (doc. 49).  Having considered the pleadings and evidence, the court finds as follows:

## I.  Factual Background

Plaintiff sues his employer, the City of Huntsville, for violations of Title VII, 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. § 1983, and 42 U.S.C. § 1981, for race discrimination and retaliation, and sues individual decision makers[1] for denial of equal protection, also under 42 U.S.C. § 1983.  Amended Complaint, ¶ 1.

---

[1] Defendant Henry Reyes was Police Chief for the City of Huntsville during the time period relevant to the plaintiff's complaints of discrimination.  Defendant Rex Reynolds was the Director of Public Safety and then the city administrator for the City of Huntsville.  Reynolds depo. at 9-10.  Prior to that, he was the Chief of Police for Huntsville from 2004 until 2007.  Reynolds depo. at 22.

The facts relevant to this case began in January 2009, when plaintiff learned he was not selected for promotion to Sergeant. Plaintiff's EEOC charge, submitted as defendant exhibit AA.  The plaintiff asserts that his non-selection was based on his race, which is white.[2]  Plaintiff depo. at 148, 151-152.  He further asserts that after he complained about race discrimination, he suffered retaliation.  Plaintiff depo. at 148.

According to the plaintiff, a lower scoring applicant, Charles Brooks, was promoted based on his race, black.  Plaintiff depo. at 150-151, 165.  The plaintiff alleges the defendant City has a history of promoting black officers ranked lower than white officers and that the City has undertaken an effort to recruit more minority officers in general, both of which lead him to the conclusion that he was not promoted due to his race.  Plaintiff depo. at 177-184.  Since this action began, the plaintiff was promoted to Sergeant in July 2010.  Plaintiff depo. at 46.

For the January 2009 promotion, four officers were certified as eligible to the Chief of Police.[3]  Plaintiff depo. at 154.  These officers were the plaintiff, Officer Brooks, and Officers Michael Danley and Michael DeNoon, both of whom are white.

---

[2]The evidence demonstrated that there were actually two Sergeant positions open at the time.  One position was awarded to Charles Brooks, who is black.  The other position went to Michael DeNoon, who is white.  Plaintiff depo. at 151-152.  The plaintiff does not challenge the promotion of DeNoon over himself based on race.  *Id.*

[3]This is the only promotion before this court.  The plaintiff has submitted depositions of individual defendants taken in litigation related to a different set of promotions, in 2007, brought by Michael Danley and Michael DeNoon, non-parties to this action.  *See* plaintiff exhibit A; *Danley v. City of Huntsville, et al.*, 5:08-cv-1855-AKK; *Denoon v. City of Huntsville, et al.*, 5:08-cv-1883-CLS.

Plaintiff depo. at 151, 154.  According to the plaintiff, he determined that he was ranked higher on the list of eligibles than Brooks, based on the order in which they were certified for promotion.  Plaintiff depo. at 163-164.  Because there was a prior round of promotions, for which the plaintiff was not certified, then a second round when he was certified, he could determine who ranked above him and who ranked below him based on test scores.  Plaintiff depo. at 164.  Therefore, when the third round eligibles was certified for promotion from the same testing and Brooks' name was added, plaintiff concluded he had to have been ranked higher than Brooks. Plaintiff depo. at 164-165.

After the written test, candidates for promotion have further exercises, which include "the in-basket exercise" and the oral assessment center.  Plaintiff depo. at 166.  Scores from these exercises are tabulated and submitted, then added to the written test score.  Plaintiff depo. at 166-167, 170.  The list of eligibles is then created from these final combined scores.  Plaintiff depo. at 171; Reyes depo. at 25.  The top three names are sent in alphabetical order to the Chief of Police, who conducts interviews.[4]  Plaintiff depo. at 173; Reynolds depo. at 16-18; Thomas depo. at 32. According to the plaintiff, because he was added as eligible for the second round of promotions from the same testing, Chief Reyes would be able to determine that the

_____

[4]When two openings for promotion are filled concurrently, a fourth name is added to the list of eligibles submitted to the Chief of Police.

3

plaintiff was ranked fourth, although the names are not provided to the Chief with rankings attached.  Plaintiff depo. at 176; Reyes depo. at 22.

The plaintiff agrees that the names certified to the Chief are those who are eligible for promotion, and the Chief then conducts an interview to determine for himself who is the best candidate for the available position.[5]  Plaintiff depo. at 176-177, 195-196.  Once human resources determines who is on the list of eligibles, the Chief can select anyone from that list.  Thomas depo. at 15, 28, 33-34.  Although Reyes acknowledged that increasing diversity in hiring was important, he also stated the best qualified person should get promoted, regardless of race or sex.  Reyes depo. at 35.  He also testified that affirmative action played no part in the promotion of Brooks.  *Id*. at 56.

Plaintiff asserts Sergeant Brooks was promoted based on his race because of defendant's efforts to increase minority hiring and retention.  Plaintiff depo. at 178. The plaintiff reached this conclusion from items such as the racial composition of the police department's recruitment team, which is mainly black and that targets predominantly black colleges for recruiting efforts, news articles and city councilmen's statements concerning the racial makeup of department heads, blacks being promoted whenever possible, and a questionnaire circulated by a prior Chief

---

[5]Although named as a defendant, Reynolds, the city administrator, testified he played no part in promotions and had no input into this promotion.  Reynolds depo. at 11.

of Police seeking suggestions on how to recruit and retain more minority officers. Plaintiff depo. at 180-184.

The plaintiff does agree that none of these items is directly related to Chief Reyes decision to promote Brooks before the plaintiff.[6]  Plaintiff depo. at 190.  No one has told him that Brooks was promoted over the plaintiff based on race.  Plaintiff depo. at 191.  However, he argues that he had better performance evaluations and a better disciplinary record than Brooks.[7]  Plaintiff depo. at 191-192.  According to Reyes, DeNoon and Brooks demonstrated better leadership capabilities than the other candidates.  Reyes depo. at 14.  Specifically, Reyes noted from prior evaluations that plaintiff could be "short with dispatch," which he considered to be a negative.  Reyes depo. at 29.

After the plaintiff learned he did not receive the January 2009 promotion, he filed a grievance with the Human Resources department, which found no evidence of discrimination.   Plaintiff depo. at 199-203; defendant exhibit X, tabs 2-3. Defendant Byron Thomas was the deputy director of human resources for the defendant City at the relevant time, and reviewed plaintiff's grievance.  Thomas depo. at 8-9, 13-14.   He considered the promotional procedures and the information

---

[6]Reyes testified that he alone made the decision to promote Brooks, without input from the City Council or the personnel review committee.  Reyes depo. at 12, 24-25.

[7]The plaintiff alleges that a prior reprimand of Brooks' was missing from Brooks' personnel file.  Plaintiff depo. at 191. According to Reyes, it was part of a performance evaluation which was located in the supervisor file at the precinct.  Reyes depo. at 41-42.

provided in determining there was no evidence that the promotion was based on race. *Id*. at 14, 26.  He also found no evidence that the plaintiff was more qualified than the other candidates for the promotion.  *Id*. at 26.

The plaintiff appealed the human resources' decision to the personnel committee,[8] which again denied his grievance.[9]  Plaintiff depo. at 203-205; defendant exhibit X, tabs 4-6.  The committee determined that it was not their job to tell the Chief who to promote, and that the plaintiff did not meet his burden of proof to establish Brooks' promotion was based on race.  Hatfield depo. at 11-12; McCallie depo. at 10.  That denial, in turn, was appealed to the defendant City Council,[10] which again denied the grievance.  Plaintiff depo. at 207; Russell depo. at 11; Kling depo. at 11-12; Culver depo. at 11; defendant exhibit X, tab 8, tab 10.  In responding to questioning during the appeal to the Council, Chief Reyes testified that he had spoken with both plaintiff's and Brook's supervisors.  Plaintiff depo. at 208.  The plaintiff

---

[8]The plaintiff named the members of that committee as individual defendants.  They are Terry Hatfield, who is the Director of Public Works Services (Hatfield depo. at 8) and who was acting chairman of the committee for this hearing (Hatfield depo. at 9); Karen McCallie, who is the landscape management administrative aide (McCallie depo. at 7); and William Brooks, who is the interim director of the informational technology department (W. Brooks depo. at 7-8). Plaintiff's counsel stated on the record that the plaintiff's retaliation claims do not apply to these defendants.  McCallie depo. at 19-20.

[9]Reynolds testified that in his position as city administrator, he generally serves as chairman of the personnel board, but chose not to in this case since he had recently served in the department from which the grievance arose.  Reynolds depo. at 29-30.  Therefore, he was merely aware that there was a grievance filed.  *Id.*

[10]The members of that Council, sued in their individual capacities, are defendants Mark Russell, Bill Kling, Sandra Moon, Richard Showers, and Will Culver.

asked his current supervisor had he been contacted by Chief Reyes, and that supervisor said he had not.  Plaintiff depo. at 209.  However, the plaintiff agrees that he has had multiple supervisors and that other than his current direct supervisor at the time, he did not ask anyone else if they had been contacted by Chief Reyes in connection with this promotion.  *Id*. at 209-210.  According to Reyes, he spoke with precinct commanders and deputy chiefs in seeking input into whom to promote.  Reyes depo. at 14-15.  Some of the feedback on plaintiff was that he was a quiet person but did his job, whereas on Brooks he was told that he was assertive and an outstanding worker.  *Id.* at 15-16.

In regard to his claim of retaliation, the plaintiff alleges that after he filed the grievance concerning the January 2009 promotion, he was denied an Officer of the Year Award, after having been nominated for the same.[11]  Plaintiff depo. at 222; plaintiff exhibit 3.  The plaintiff states he was the only person nominated from any of the precincts for this award, and his captain approved it, but then that approval was overridden, by Chief Deputy Mark Hudson.[12]  Plaintiff depo. at 234.  However, he has

---

[11]Although the plaintiff named each of the individual members of the Huntsville City Council in his complaint with regard to his claim of retaliation, he admits in his deposition that none of those named defendants had anything to do with his not receiving the Officer of the Year award or Chief Reyes' decision to allow the promotional list to expire.  Plaintiff depo. at 245-248.

[12]Reyes stepped down as the City of Huntsville Chief of Police prior to plaintiff's promotion to Sergeant in July 2010. Reyes depo. at 39.  At the time in question, Hudson was Deputy Chief.  Reyes depo. at 53.  Hudson became the Chief of Police in June 2010.  Hudson affidavit, ¶ 2.

no information which suggests that Hudson knew of his grievance.  *Id*. at 236-237.
Reyes testified he was responsible for disapproving this award for plaintiff, because
there were three candidates at the time from the same precinct, and the precinct
selected a different person.[13]  Reyes depo. at 49-50.  No compensation in any form is
associated with the Officer of the Year award.  Plaintiff depo. at 250-251.

The plaintiff's other offer of proof of retaliation concerns the request of
Michael DeNoon, the officer who was promoted at the same time as Brooks, to be
returned to his previous assignment in June 2009.  Plaintiff depo. at 223.  Because
there were two names left on the list of eligibles, himself and Michael Danley, the
plaintiff asserts a promotion should have been made, but instead Chief Reyes allowed
the list to expire the following month.  Plaintiff depo. at 223.  The position remained
open until the next promotional test was given, preventing plaintiff from being
promoted sooner than he was.  Plaintiff depo. at 223, 228.  While the plaintiff agreed
that Danley was ranked higher than he was on that prior round of testing, he believed
he, and not Danley, would have received that promotion.  *Id*. at 228.  According to
Reyes, he could not fill the open sergeant position because when DeNoon stepped
down, it filled an unopen investigator position.  Reyes depo. at 16.  Thus, Reyes had

---

[13]Reyes further explained he changed the system to where each precinct could have only
one officer of the year.  Reyes depo. at 53.

to wait until an investigator retired, some months later, and use that opening to fill the sergeant position. *Id*. at 16-17.

Reyes stated that had he a third position available at the time Brooks and DeNoon were promoted, he would have filled that slot with the plaintiff over Danley, because the plaintiff had better qualities and judgment.  Reyes depo. at 17-18; 38.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party' case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Insurance.*, 232 F.3d 844, 848 (11th Cir.2000).

### III.  Legal Analysis

***Race Discrimination and the Failure to Promote claim (Counts I and II):***

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to

find illegal discrimination.  *Wilson v. B/E Aerospace, Inc,*. 376 F.3d 1079, 1088 (11th

Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48,

120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that the above facts constitute race discrimination.[14]  As there

is no direct evidence of discrimination, the court applies the analysis required for

circumstantial evidence.  This court must apply the three prong test fashioned by the

Supreme Court in  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817

(1973).  *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248;

252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must establish a

*prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93

S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the

employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254,

101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir.

1997).  Assuming the employee meets this burden, the burden then shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the alleged

---

[14]Claims against state actors for violations of section 1981 must be brought pursuant to section 1983. *Bryant v. Jones*, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009)(citing *Butts v. County of Volusia,* 222 F.3d 891, 892-94 (11th Cir.2000). Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts. *Polite v. Dougherty County School System,* 314 Fed.Appx. 180, 181 n. 1 (11th Cir.2008) (citing *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n. 5 (11th Cir.2008). Although plaintiff has stated these claims pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983, these statutes are all analyzed under the *McDonnell Douglas* framework.  *See e.g., Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1330 (11th Cir.1998); *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n. 13 (11th Cir.1998).

discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.  A plaintiff has not successfully demonstrated pretext "unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir.2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)). The plaintiff may do so by either directly "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas*, 411 U.S. at 804-05, 93 S.Ct. at 1825-26).

To establish a claim for failure to promote, the plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified and applied for the position; (2) he was rejected despite his qualifications; and (3) other equally or less qualified employees who are not members of his race were hired." *Brown v. Alabama Dept. of Transportation,* 597 F.3d 1160, 1174 (11th Cir.2010); *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1089 (11th Cir.2004); *Weigand v. City of Perry,* 2008 WL 350975, 4 (M.D.Ga. 2008)(citing *Bass v. Board of County Commissioners, Orange, County, Fla.,* 256 F.3d 1095, 1104 (11th Cir.2001)*(overruled in part on other grounds Crawford v. Carroll,* 529 F.3d 961 (11th Cir.2008)).

The court has carefully read the evidentiary submissions.  Although disputed by the defendant, the court finds the plaintiff does establish a *prima facie* case for his failure to promote claim.  This means only that the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for its decision.

Although plaintiff repeatedly asserts he was ranked higher than Brooks and therefore should have received the January 2009 promotion, Reyes explained that plaintiff did not meet his subjective criteria for the promotion at issue.  Reyes freely admits that all four of the individuals were eligible and qualified for the promotion, hence their names were on the list of eligibles.  According to Reyes, at that point he was free to choose any of the names on the list.  Reyes testified that he considered each of the candidates and picked the two he thought would perform the best job,

based on his subjective beliefs about the strengths of each individual and how those met the qualities he sought for sergeant. The court is not at liberty to decide whether the candidate selected was, in fact, the most qualified. *See e.g. Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir.2001)("We do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." (citation omitted)).  Hence, plaintiff's allegations that he was better qualified, or ranked higher, than Brooks are simply not sufficient to rebut the defendant's legitimate, non-discriminatory reasons:

> If the evidence of pretext is the disparity between the selected candidate's qualifications and those of the plaintiff, for that evidence to suffice, the disparities must be "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Converges Customer Mgt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir.2007)(quoting *Cooper*, 390 F.3d at 732). In challenging the employer's decision, the plaintiff should not "substitute his business judgment for that of the employer" or "quarrel[ ] with the wisdom" of the proffered reason for the employment action, but must meet that reason "head on and rebut it." *Chapman,* 229 F.3d at 1030. It is also not sufficient for a plaintiff to merely challenge that a proffered reason is untrue if there is no evidence that the employer (through its agent) did not honestly believe that it was. *See Vessels*, 408 F.3d at 771 (citing *Elroy v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991)); *Cooper*, 390 F.3d at 740.

*Dunlin v. Montgomery County Bd. of Educ.*  652 F.Supp.2d 1226, 1236-1237 (M.D.Ala.2009).

Subjective reasons are "legally sufficient, legitimate, nondiscriminatory reason[s] if the defendant articulates a clear and reasonably specific factual basis on which

14

it based its subjective opinion." *Conner v. Lafarge North America, Inc.*, 343 Fed.Appx. 537, 541 (11th Cir.2009); citing *Chapman v. AI Transp.*, 229 F .3d 1012, 1034 (11th Cir.2000).[15] Absent evidence that subjective criteria were used to mask discrimination, the fact that an employer based a promotion decision on purely subjective criteria will rarely, if ever, prove pretext. *Springer v. Convergys Customer Management Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir.2007). As the Eleventh Circuit has recognized:

> [A]lthough one perhaps could argue that Potter was indeed the best candidate on paper, the evidence marshaled by the Plaintiffs does not demonstrate that he was so much more qualified than his black counterparts that a reasonable jury, on this record, could infer discrimination from the mere fact of his non-selection.... As we often have said, Title VII is not designed to make federal courts " 'sit as a super-personnel department that reexamines an entity's business decisions.' " *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991).

*Denny v. City of Albany*,  247 F.3d at 1188.

Because the defendant has established a legitimate, non-discriminatory reason for the selection of Brooks over plaintiff, the burden shifts to the plaintiff to put forth evidence that such reason is pretextual, and the real reason for the decision was

---

[15]The Court in *Conner* continued that, "Specifically, Lafarge asserts that Conner performed poorly in those portions of the interview dealing with the crucial areas of leadership, decisionmaking, safety, and computer skills. Lafarge has satisfied its burden of offering a legitimate, nondiscriminatory reason for the challenged employment decision." *Conner*, 343 Fed.Appx. at 541.  The Eleventh Circuit continued that "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based ... a promotion decision on purely subjective criteria will rarely, if ever, prove pretext ...." *Id.* at 542 (quoting *Denny v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir.2001)).

discrimination.  In *Ash v. Tyson Foods, Inc*.,  546 U.S. 454, 126 S.Ct. 1195 (2006), the Supreme Court set forth various standards for weighing judgment decisions based on comparative qualifications such as

> *see, e.g., Cooper*, *supra,* at 732 (noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question" (internal quotation marks omitted)); *Raad v. Fairbanks North Star Borough School* Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are " 'clearly superior' " to those of the selected job applicant); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir.1998) (en banc) (concluding the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job"), and in this case the Court of Appeals qualified its statement by suggesting that superior qualifications may be probative of pretext when combined with other evidence, *see* 129 Fed.Appx., at 533.

*Ash*, 546 U.S. at 457-458, 126 S.Ct. at 1197-1198.

The plaintiff makes much ado about defendant Showers and "Robert Harrison" expressing "concerns to Rex Reynolds about lack of minorities in upper level command positions within the police department."  Plaintiff's response at 14.  Given that by all evidence before the court in this case, Rex Reynolds had no say in the final decision of whom Reyes promoted, that no Robert Harrison appears in this litigation, and that this argument cites to depositions concerning promotions before Chief Reyes became Chief, the court finds it has absolutely no bearing on whether race played an impermissible role in the promotion before this court.  Even if, as plaintiff suggests,

Rex Reynolds "said he tried to promote more minorities into management positions..." (plaintiff response, at 15), the plaintiff has failed to provide any evidence that the July 2009 promotion was so influenced.[16]

In light of the foregoing, the court shall grant summary judgment in favor of the defendants and against the plaintiff on these counts of the complaint.

### Retaliation (Counts III and IV)[17]

The plaintiff also alleges that he was retaliated against for filing a grievance regarding his lack of selection for this promotion.  Plaintiff's response, at 21.  To establish retaliation for engaging in protected activity, the court must apply the *McDonnell-Douglas* burden shifting standard.[18]  The plaintiff must prove (1) he participated in a protected activity; (2) he suffered an adverse employment action; and

---

[16]The court notes that plaintiff mixes statements from prior depositions, which were addressed at prior litigation for prior claims of discrimination arising from prior promotions which did not affect the plaintiff here at all, with statements from depositions actually taken for and relevant to, this litigation.  *See e.g.*, plaintiff's response, at 16-17.  The court sees no benefit to taking statements from depositions involving other litigants regarding other promotions made by other decision makers and mixing them with statements actually taken for plaintiff's case, such apple/orange mixing cannot create a genuine issue of material fact where none exists.

[17]The defendants assert that these claims are barred by the plaintiff's failure to file an EEOC charge regarding the same.  Defendants' brief at 30-31.  The plaintiff asserts that because the retaliation claims "grow out" of the discrimination claim, the charge was broad enough to encompass the relation claim.  Plaintiff's response at 22-24.  Because the court finds the retaliation claims are foreclosed on their merits, as explained below, the court does not address this dispute.

[18]This is true for both the plaintiff's Title VII and § 1983/§ 1981 claims.  As with the plaintiff's failure to promote claim, the court applies the same analysis to both of these claims. *See e.g., Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir.2001).

(3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Brown v. Alabama Dept. of Transportation,* 597 F.3d 1160, 1181 (11th Cir. 2010), citing *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir.2009).

Filing a grievance is clearly a protected activity.  However, neither allowing the promotion list to expire, nor the non-selection for Officer of the Year are adverse employment actions.  Neither of these actions directly affecting the plaintiff's pay, hours worked, or future promotion potential. *See e.g., Akins v. Fulton County, Ga.,* 420 F.3d 1293, 1300 (11th Cir.2005) ("conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment [or] deprives him of employment opportunities ... 'qualifies as an adverse employment action.").  In deciding whether employment actions are adverse, the Eleventh Circuit requires courts to consider the employer's acts both individually and collectively. *Shannon v. Bellsouth Telecomms., Inc*., 292 F.3d 712, 716 (11th Cir.2002).  The Supreme Court has held that Title VII does not protect against all retaliation, but only retaliation that results in an injury or harm. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006). In discussing the second prong of a *prima facie* retaliation case, the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

18

worker from making or supporting a charge of discrimination." *Id.* at 2415 (quotations omitted).  Plaintiff's allegations of adverse actions in this case simply do not rise to that level.

While the plaintiff argues commendations such as the Officer of the Year Award are considered for future promotions (plaintiff's response at 24), after not receiving this award, the plaintiff received a promotion, and Chief Reyes changed plaintiff's nomination for Officer of the Year into a commendation.[19]  Reyes depo. at 46.  Rather, this is within the category of "ordinary tribulations of the workplace and petty slights" that the Supreme Court has ruled not actionable.  *See Burlington Northern*, 126 S.Ct. at 2415 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

As to the plaintiff's assertion that Reyes allowed the promotion list of eligibles to expire in retaliation for plaintiff's filing of a grievance, Reyes explained that DeNoon requested to return to investigator on June 25, 2009, which Reyes approved on June 29, 2009.  Reyes affidavit, submitted as defendant exhibit M, ¶ 9. Because there was no open investigator position, this move required approval by the City

---

[19]The court notes Danley, who was not selected for promotion, had far more commendations and awards than any of the other three candidates.  Defendant exhibit M, tab 4.

Council. *Id. See also* defendant exhibit M, tabs 7-8.[20]  The list then expired on July

2, 2009.  *Id.*  At that time, there was no sergeant position open because that position

had been moved to investigator.  Not until an investigator position opened was the

vacant sergeant slot filled.  Reyes depo. at 16-17.  Although the plaintiff argues that

"Reyes testified that had the list not expired, Plaintiff would have been promoted"

(plaintiff's response, at 25), Reyes actually testified that if he had a third position

open, between plaintiff and Danley he would have promoted plaintiff.  Reyes depo.

at 17.  Plaintiff follows this misquoted tangent to conclude that had the list not

expired, he would have been promoted and therefore the failure to promote him a year

earlier than July 2010 was an adverse employment action.  Plaintiff's response, at 25.

Missing from this argument is recognition that there was no sergeant position open.

The undisputed evidence is that when DeNoon moved back to investigator, his

sergeant position was changed to an investigator position. Therefore there was no job

---

[20]The City Council Ordinance states in relevant part:
> BE IT ORDAINED by the City Council ... that Budget Ordinance No. 08-1233, adopted and approved on December 18, 2008, is hereby amended for changes in authorized personnel strength of the various departments, as follows:
> ...
> In the Police Department add one (1) Investigator grade 15, and delete one (1) Police Sergeant grade 16.
> ...
> ADOPTED this the 9th day of July, 2009.

Defendant Exhibit M, Tab 7.

vacancy when the prior list expired.  Because there was no vacancy, the expiration of the list could not have harmed plaintiff.

The plaintiff has offered no evidence which supports his argument that he suffered adverse employment actions in retaliation for his grievance.  Therefore, the court must grant summary judgment on plaintiff's claims of retaliation as well.

***Equal Protection (Count V):***

Defendants first assert they are entitled to qualified immunity in response to plaintiff's equal protection claims.  However, "[r]ace discrimination was prohibited in public employment well before the challenged employment decision" here. *See Koch v. Rugg*, 221 F.3d at 1283, 1298 n. 32 (11th Cir.2000)(citing *Washington v. Davis*, 426 U.S. 229, 239-41, 96 S.Ct. 2040, 2047-48, 48 L.Ed.2d 597 (1976) and *Busby v. City of Orlando*, 931 F.2d 764, 775 (11th Cir.1991)).  Further, courts have specifically found various race-based employment decisions by public officials, including those concerning discipline, promotions, and reclassifications, to be in violation of a constitutional right. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1313, 1321 (11th Cir.2000) (affirming a jury verdict of intentional employment discrimination by a black sheriff who made race-based employment decisions concerning white officers with respect to discipline, promotions, transfers, and reclassifications). *See also  Gardner v. City of Camilla, Ga.*, 186 Fed.Appx. 860, 863 n. 3 (11th  Cir.2006).

However, finding that the defendants are not protected by qualified immunity does not assist the plaintiff.  In his complaint, the plaintiff asserts that "Defendant Reyes, Reynolds, Byron K. Thomas, Hatfield, McCallie, Brooks, Russell, Kling, Moon, Showers and Culver denied Plaintiff his Constitutional right to equal protection under the law and his federally protected rights under 42 U.S.C. § 1983. Amended complaint, ¶ 92.  What the plaintiff lacks is any evidence which supports this assertion.  Rather, the plaintiff states only "[t]he Defendants rely on the pretext analysis discussed above.  Accordingly, Plaintiff relies on his pretext analysis.  A jury could find intentional discrimination and retaliation on the part of Defendant Reyes based on the repeated decisions to promote African-American job applications..." Plaintiff's response, at 29.  However, to avoid summary judgment, the plaintiff may not upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Plaintiff has clearly abandoned any claims he has against defendants Reynolds, Byron K. Thomas, Hatfield, McCallie, Brooks, Russell, Kling, Moon, Showers and Culver for violation of his constitutional right to equal protection. *See  Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000)("failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Iraola &*

22

*CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir.2001). All claims against the above named defendants on these grounds shall be dismissed with prejudice as abandoned.

As to the remaining claims under 42 U.S.C. § 1983, the defendants assert that defendant City of Huntsville ("COH") can have no § 1983 liability because there is no underlying constitutional or statutory violation. Defendants' brief, at 39. The plaintiff "alleges that the City has § 1983 liability as it related to Brooks' promotion only." Plaintiff's response at 29. Therefore, the court has considered whether the promotion of Brooks over plaintiff (1) was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066; 117 L.Ed.2d 261 (1992). Assuming the court could find a constitutional violation in plaintiff's non-selection for promotion, the plaintiff cannot establish any basis for holding COH liable for it.

The United States Supreme Court has stated:

> We have consistently refused to hold municipalities liable under a theory of respondeat superior. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (plurality opinion); *id.*, at 828, 105 S.Ct., at 2438 (opinion of BRENNAN, J.); *Pembaur, supra,* at 478-479, 106 S.Ct., at 1297-1298; *St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (plurality opinion); *id.*, at 137, 108 S.Ct., at 931 (opinion of

> BRENNAN, J.)*; Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).
>
> Instead, in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. *See Monell, supra*, at 694, 98 S.Ct., at 2027; *Pembaur, supra*, at 480-481, 106 S.Ct., at 1298-1299; *Canton, supra*, at 389, 109 S.Ct., at 1205. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell, supra*, at 694, 98 S.Ct., at 2027.

*Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).

The plaintiff alleges there was a policy or custom of promoting African-American job applicant who ranked lower than white officers on the qualifying examination. Plaintiff response, at 29. However, that is not what the evidence reflects. Rather, as detailed in prior sections of this opinion, the evidence reflects the defendant city policy was to certify the top three scoring candidates as eligible for promotion to sergeant. At that point, the Chief of Police was free to select any of those three. The Chief of Police did so. Although the plaintiff quarrels with the qualities Chief Reyes testified he sought, the plaintiff fails to refute that testimony. Hence, the plaintiff both failed to establish any policy of promoting minority applicants when such individual was not the best candidate for the job, and failed to establish any basis for asserting violation of his right to equal protection against

COH.  In the absence of a constitutional deprivation, the plaintiff cannot sustain a cause of action against COH under section l983.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.1996); *Barnwell v. Douglas County,* 390 Fed.Appx. 862, 864 (11th Cir.2010)(" Because we conclude that there was no constitutional violation, the municipality and the Sheriff are also entitled to judgment in their favor"); *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir.2009) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact ... the officer inflicted no constitutional harm."

The court therefore finds the remaining defendants are due to have summary judgment granted in their favor and against the plaintiff on this claim as well.[21]

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court shall order that the defendants' motions for summary judgment on all

---

[21]The parties delve into argument concerning whether the plaintiff's § 1983 claim is barred by collateral estoppel.  Because the court finds the defendants are entitled to judgment in their favor on the merits of this claim, the court has not addressed whether the grievance process as set forth by the City of Huntsville has a preclusive effect on this claim.

counts of the plaintiff's complaint are due to be granted and the plaintiff's claims

shall be dismissed with prejudice.

**DONE** and **ORDERED** this the 13th day of December, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE